**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BROADVISION, INC.,[1] | Case No. 20-10701 (CSS) |
| Debtor. | **Re: D.I. 14, 15, 57, 58, 113, 125, 127** |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF AN ORDER
CONFIRMING THE AMENDED PREPACKAGED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR BROADVISION, INC.**

---

[1]       The last four digits of the Debtor's federal tax identification number are 4303. The Debtor's address is 460 Seaport Ct., Suite 102, Redwood City, California 94063.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ..................................................................................................2

    A.    General Background ............................................................................................2

    B.    Overview of the Plan ..........................................................................................4

    C.    It was Not Necessary to Solicit Votes for Acceptance of Rejection of the Plan .....5

    D.    Setting Bar Dates and Filing Schedules to Confirm General Unsecured Claims....6

    E.    Notice of the Commencement of the Chapter 11 Case and Combined Hearing .....7

MEMORANDUM OF LAW ..................................................................................................8

I.    The Plan Fulfills the Statutory Requirements for Confirmation Under Bankruptcy Code Sections 1123 and 1129 ..................................................................................................9

    A.    The Plan Satisfies the Requirements for Confirmation under Bankruptcy Code Section 1129(a)(1) ..............................................................................................9

        1.    The Plan Complies with Section 1122(a) of the Bankruptcy Code ............9

        2.    The Plan Complies With Bankruptcy Code Section 1123(a) ...................11

        3.    The Plan Incorporates Certain Permissible Provisions Consistent with Bankruptcy Code Section 1123(b)...........................................................15

        4.    The Plan Complies with Section 1123(d) of the Bankruptcy Code...........18

    B.    The Plan Satisfies the Requirements for Confirmation Under Bankruptcy Code Section 1129(a)(2) ............................................................................................18

        1.    The Plan Complies With Bankruptcy Code Section 1125........................19

        2.    The Plan Complies With Bankruptcy Code Section 1126........................21

    C.    The Plan Has Been Proposed in Good Faith (Bankruptcy Code Section 1129(a)(3)) ......................................................................................................21

    D.    The Plan Provides for Bankruptcy Court Approval of Certain Administrative Expenses (Bankruptcy Code Section 1129(a)(4))................................................22

    E.    The Plan Provides All Necessary Information Regarding Individuals Who Will Hold Post-Confirmation Positions (Bankruptcy Code Section 1129(a)(5)) ..........23

i

F.    No Governmental Regulatory Commission Has Jurisdiction Over the Debtor (Bankruptcy Code Section 1129(a)(6)).................................................................24

G.    The Plan Satisfies the Best Interests Test (Bankruptcy Code Section 1129(a)(7)) .......................................................................................................................25

H.    The Plan Has Been Accepted by Impaired Voting Classes (Bankruptcy Code Section 1129(a)(8)) ...........................................................................................26

I.    The Plan Provides for the Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Bankruptcy Code Section 1129(a)(9))................................26

J.    The Plan Has Been Accepted by at Least One Class of Impaired Claims (Bankruptcy Code Section 1129(a)(10)).................................................................27

K.    The Plan is Feasible (Bankruptcy Code Section 1129(a)(11)) ............................27

L.    The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Bankruptcy Code Section 1129(a)(12))..................................................................30

M.    Inapplicable Provisions (Bankruptcy Code Sections 1129(a)(13) through (a)(16)) .......................................................................................................................31

N.    Confirmation of the Plan Over Non-Acceptance of Impaired Classes (Bankruptcy Code Section 1129(b)) ......................................................................31

O.    The Plan is the Only Plan Currently on File (Bankruptcy Code Section 1129(c))35

P.    The Principal Purpose of the Plan is Not the Avoidance of Taxes (Bankruptcy Code Section 1129(d)) ........................................................................................35

II.    The Disclosure Statement Provides Adequate Information...............................35

III.    The Assumption or Rejection of Executory Contracts and Unexpired Leases Under the Plan Should be Approved .......................................................................37

IV.    The Releases Contemplated by the Plan Should be Approved.........................38

A.    The Debtor Releases Should be Approved ..........................................................39

B.    The Third Party Releases Should be Approved....................................................41

V.    Waiver of Any Stay of the Confirmation is Appropriate...................................43

WEST\290435129.6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship.*,
   190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds,* 526 U.S. 434
   (1999) ........................................................................................................................32

*In re Adelphia Commc'ns, Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007) ....................................................................25

*In re All Land Invs., LLC*,
   468 B.R. 676 (Bankr. D. Del. 2012) ..................................................................26, 27

*In re Am. Capital Equip., LLC*,
   688 F.3d 145 (3d Cir. 2012)..............................................................................27, 28

*In re Armstrong World Indus., Inc.*,
   348 B.R. 111 (D. Del. 2006)..........................................................................9, 10, 33

*In re Autobacs Strauss, Inc.*,
   473 B.R. 525 (Bankr. D. Del. 2012) .......................................................................36

*In re Aztec Co.*,
   107 B.R. 585 (Bankr. M.D. Tenn. 1989) ...............................................................33

*Bank of Am. Nat'l Trust & Savings Assoc. v. 203 N. LaSalle St. Partnership*,
   526 U.S. 434 (1999)................................................................................................25

*In re Bowles*,
   48 B.R. 502 (Bankr. E.D. Va. 1985).......................................................................32

*In re Buckhead America Corp.*,
   180 B.R. 83 (Bankr. D. Del. 1995) .........................................................................37

*In re Century Glove, Inc.*,
   No. 90-400-SLR, 1993 WL 239489 (D. Del. Feb. 10, 1993) ..................................22

*Clarkson v. Cooke Sales & Servs. Co. (In re Clarkson)*,
   767 F.2d 417 (8th Cir. 1985) .................................................................................29

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ...................................................10, 33, 39, 42

*In re Dakota Rail, Inc.*,
   104 B.R. 138 (Bankr. D. Minn. 1989) ....................................................................36

iii

*In re Drexel Burnham Lambert Grp., Inc.*,
   138 B.R. 723 (Bankr. S.D.N.Y. 1992) ..........................................................................19, 28

*In re DRW Prop. Co.*,
   82, 60 B.R. 505 (Bankr. N.D. Tex. 1986) ..............................................................................10

*In re Exide Techs.*,
   303 B.R. 48 (Bankr. D. Del. 2003) .......................................................................................40

*In re Ferretti*,
   128 B.R. 16 (Bankr. D.N.H. 1991) .......................................................................................36

*First Fid. Bank v. McAteer*,
   985 F.2d 114 (3d Cir. 1993)...........................................................................................40, 42

*In re Freymiller Trucking, Inc.*,
   190 B.R. 913 (Bankr. W.D. Okla. 1996) ..............................................................................32

*In re Genesis Health Ventures, Inc.*,
   266 B.R. 591 (Bankr. D. Del. 2001) .......................................................................................9

*In re Gibson Brands, Inc., et al.*,
   Case No. 18-11025 (CSS) (Bankr. D. Del. Oct. 4, 2018).....................................................42

*In re Global Ocean Carriers, Ltd.*,
   251 B.R. 31 (Bankr. D. Del. 2000) .......................................................................................27

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe*
*Enters., Ltd. II)*,
   994 F.2d 1160 (5th Cir. 1993) ..............................................................................................28

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) .............................................................................. *passim*

*IRS v. Kaplan (In re Kaplan)*,
   104 F.3d 589 (3d Cir. 1997)..................................................................................................28

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987)................................................................................................10

*In re Joerns Woundco Holdings, Inc.*,
   No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019).....................................................42, 43

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988)...................................................................................................9

*In re Klein Sleep Prods., Inc.*,
   78 F.3d 18 (2d Cir. 1996)......................................................................................................14

iv

*L.R.S.C. Co. v. Rickel Home Ctrs. Inc. (In re Rickel Home Ctrs. Inc.)*,
  209 F.3d 291 (3d Cir. 2000)...........................................................................38

*In re Landing Assoc., Ltd.*,
  157 B.R. 791 (Bankr. W.D. Tex. 1993)............................................................28

*In re Larson, Inc.*,
  300 B.R. 227 (Bankr. D. Del. 2003) ................................................................25

*In re Lernout & Hauspie Speech Prods., N.V.*,
  301 B.R. 651 (Bankr. D. Del. 2003).................................................................33

*In re Lernout & Hauspie Speech Prods. N.V.*,
  308 B.R. 672 (D. Del. 2004)............................................................................21

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*,
  115 F.3d 650 (9th Cir. 1997) .....................................................................32, 33

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville)*,
  837 F.2d 89 (2d Cir. 1988)..............................................................................39

*In re Master Mortgage Inv. Fund, Inc.*,
  168 B.R. 930 (Bankr. W.D. Mo. 1994)..................................................39, 40, 41

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*,
  354 B.R. 1 (D. Conn. 2006) ............................................................................28

*In re Molycorp, Inc., et al.*,
  Case No. 15-11357 (CSS) (Bankr. D. Del. Apr. 8, 2016) .....................................42

*N.L.R.B. v. Bildisco & Bildisco*,
  682 F.2d at 79 ...............................................................................................37

*In re New Valley Corp.*,
  168 B.R. 73 (Bankr. D.N.J. 1994) ....................................................................22

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) .................................................................22

*NLRB v. Bildisco & Bildisco*,
  465 U.S. 513 (1984)........................................................................................37

*In re Nuverra Envtl. Sols, Inc.*,
  590 B.R. 75 (D. Del. 2018) ..............................................................................10

*In re Offshore Grp. Inv. Ltd*,
  No. 15-12422 (BLS) (Bankr. D. Del. Jan. 15, 2016)...........................................43

v

*In re Optim Energy, LLC*,
No. 14-10262 (BLS) (Bankr. D. Del. Oct. 14, 2015) ............................................43

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993)....................................................................................14

*In re PWS Holding Corp.*,
228 F.3d 224 (3rd Cir. 2000) ...........................................................................21, 25

*In re Rubicon U.S. REIT, Inc.*,
434 B.R. 168 (Bankr. D. Del. 2010) ....................................................................34

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996)...................................................................................36

*In re Sea Garden Motel and Apartments*,
195 B.R. 294 (Bankr. D. N.J. 1996) .....................................................................28

*In re Specialty Equip. Cos., Inc.*,
3 F.3d 1043 (7th Cir. 1993) ..................................................................................42

*Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*,
83 F.3d 735 (5th Cir. 1996) ..................................................................................38

*In re Sun Country Dev., Inc.*,
764 F.2d 406 (5th Cir. 1985) ................................................................................22

*In re Taylor*,
913 F.2d 102 (3d. Cir. 1990)................................................................................37

*In re Texaco Inc.*,
84 B.R. 893 (Bankr. S.D.N.Y. 1988).....................................................................28

*The Mutual Life Ins. Co. of New York v. Patrician St. Joseph Partners (In re Patrician St. Joseph Partners)*,
169 B.R. 669 (Bankr. D. Ariz. 1994).....................................................................29

*In re Toy & Sports Warehouse, Inc.*,
37 B.R. 141 (Bankr. S.D.N.Y. 1984)...........................................................9, 19, 23

*In re Trans World Airlines, Inc.*,
261 B.R. 103 (Bankr. D. Del. 2001) .....................................................................37

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del. 2011) .......................................................................9

*In re Tribune Co*,
472 B.R. 223 (Bankr. D. Del. 2012) .....................................................................33

vi

*In re True Religion Apparel, Inc., et al.*,
  Case No. 17-11460 (CSS) (Bankr. D. Del. Oct. 5, 2017) ......................................42

*U.S. Nat'l Bank Assoc. v. Wilmington Trust Co. (In re Spansion, Inc.)*,
  426 B.R. 114 (Bankr. D. Del. 2010) ...........................................................39, 40, 43

*U.S. v. Energy Res. Co.*,
  495 U.S. 545 (1990) .........................................................................................28

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) .....................28, 39

*In re Washington Mut., Inc.*,
  461 B.R. 200 (Bankr. D. Del. 2011) ..................................................................25

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ..........................................................22, 39, 40

## Statutes

11 U.S.C. § 507(a)(2) ...........................................................................................30

11 U.S.C. § 1114(a) .............................................................................................31

11 U.S.C. §1122(a) ................................................................................................9

11 U.S.C. § 1123(a)(6) ....................................................................................14, 15

11 U.S.C. § 1123(b)(1)-(3), (6) ...........................................................................16

11 U.S.C. § 1129(a)(5)(A)(ii) .....................................................................15, 23, 24

28 U.S.C. § 1930 .................................................................................................30

28 U.S.C. § 1930(a)(6) .........................................................................................30

31 U.S.C. § 3717 .................................................................................................30

United States Code Title 11 Sections 1125 and 1126(b) .........................................1

United States Code Title 28 ...................................................................................30

Bankruptcy Code Chapter 7.........................................................................25, 26, 41

Bankruptcy Code Chapter 11 ..................................................................... *passim*

Bankruptcy Code Section 365 ..........................................................................16, 38

Bankruptcy Code Sections 365 and 1123(b) ..........................................................37

Bankruptcy Code Section 365(a) ................................................................13, 14, 37

Bankruptcy Code Section 365(b)(1) ....................................................................18

Bankruptcy Code Section 503(b)(9) ......................................................................6

Bankruptcy Code Section 507 ..............................................................................30

Bankruptcy Code Sections 507 and 1129(a)(12) ................................................30

Bankruptcy Code Section 524(e) .........................................................................42

Bankruptcy Code Sections 1107(a) and 1108 .......................................................2

Bankruptcy Code Section 1114 ............................................................................31

Bankruptcy Code Section 1122 ..................................................................9, 10, 12

Bankruptcy Code Sections 1122 and 1123 ............................................................9

Bankruptcy Code Section 1122(a) ..............................................................9, 10, 11

Bankruptcy Code Sections 1123 and 1129 .........................................................8, 9

Bankruptcy Code Section 1123(a) ............................................................11, 12, 15

Bankruptcy Code Section 1123(a)(1) ...................................................................12

Bankruptcy Code Section 1123(a)(2) ...................................................................12

Bankruptcy Code Section 1123(a)(3) ...................................................................12

Bankruptcy Code Section 1123(a)(4) .............................................................12, 13

Bankruptcy Code Section 1123(a)(5) .............................................................13, 14

Bankruptcy Code Section 1123(a)(6) ...................................................................14

Bankruptcy Code Section 1123(a)(7) ...................................................................15

Bankruptcy Code Section 1123(a), Section 1123(a)(8) .......................................11

Bankruptcy Code Section 1123(b)..........................................................15, 16, 18

Bankruptcy Code Section 1123(b)(1) ...................................................................16

Bankruptcy Code Section 1123(b)(2) ...................................................................16

Bankruptcy Code Sections 1123(b)(3) and (5) .....................................................16

WEST\290435129.6

Bankruptcy Code Section 1123(b)(4) ...................................................................................17

Bankruptcy Code Section 1123(b)(6) ...................................................................................17

Bankruptcy Code Section 1123(d) ........................................................................................18

Bankruptcy Code Section 1124 ............................................................................................12

Bankruptcy Code Section 1125 ......................................................................................19, 36

Bankruptcy Code Sections 1125 and 1126 .....................................................................19, 21

Bankruptcy Code Section 1125(a)(1) .............................................................................35, 36

Bankruptcy Code Section 1125(b).......................................................................................35

Bankruptcy Code Section 1125(e).......................................................................................22

Bankruptcy Code Section 1126 ...........................................................................................21

Bankruptcy Code Section 1126(f) ..................................................................................21, 26

Bankruptcy Code Section 1126(g)............................................................................21, 26, 34

Bankruptcy Code Section 1129 ..............................................................................1, 2, 9, 35

Bankruptcy Code Section 1129(a)...............................................................................19, 31, 32

Bankruptcy Code Section 1129(a)(1) ....................................................................................9

Bankruptcy Code Section 1129(a)(2) .............................................................................18, 21

Bankruptcy Code Section 1129(a)(3) .............................................................................21, 22

Bankruptcy Code Section 1129(a)(4) .............................................................................22, 23

Bankruptcy Code Section 1129(a)(5) .............................................................................15, 23

Bankruptcy Code Section 1129(a)(5)(A)(i) ....................................................................23, 24

Bankruptcy Code Section 1129(a)(5)(B) ..............................................................................24

Bankruptcy Code Section 1129(a)(6) ...................................................................................24

Bankruptcy Code Section 1129(a)(7) ...................................................................................25

Bankruptcy Code Section 1129(a)(8) .............................................................................26, 31

Bankruptcy Code Section 1129(a)(9) .........................................................................26, 27, 28

Bankruptcy Code Section 1129(a)(10) ....................................................................27

Bankruptcy Code Sections 1129(a)(10) and 1129(b)(1)............................................26

Bankruptcy Code Section 1129(a)(11) ....................................................................27

Bankruptcy Code Section 1129(a)(12) ................................................................30, 31

Bankruptcy Code Section 1129(a)(13) ....................................................................31

Bankruptcy Code Sections 1129(a)(13) through (a)(16) ..............................................31

Bankruptcy Code Section 1129(a)(14) ....................................................................31

Bankruptcy Code Section 1129(a)(15) ....................................................................31

Bankruptcy Code Section 1129(a)(16) ....................................................................31

Bankruptcy Code Section 1129(b)......................................................................31, 32, 34

Bankruptcy Code Section 1129(b)(1) ......................................................................32

Bankruptcy Code Section 1129(b)(2) ......................................................................33

Bankruptcy Code Section 1129(c)..........................................................................35

Bankruptcy Code Section 1129(d)..........................................................................35

Securities Act of 1933 Section 5........................................................................8, 35

**Other Authorities**

Bankruptcy Rule 3020(e)..............................................................................8, 43, 44

Bankruptcy Rules 3017 and 3018..........................................................................21

Bankruptcy Rules 3017, 3018, and 3019 ..................................................................19

H.R. Rep. No. 95-595 (1977).............................................................................9, 19

S. Rep. No. 95-989 (1978) ..............................................................................9, 19

WEST\290435129.6

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this memorandum of law (this "Memorandum") in support of approval of *Disclosure Statement for the Amended Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code for BroadVision, Inc.* [D.I. 58] (together with all exhibits and supplements, the "Disclosure Statement"), pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), approval of confirmation procedures on a final basis and confirmation of the *Amended Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for BroadVision, Inc.*, dated April 3, 2020 [D.I. 57] (as amended, supplemented, or modified, the "Plan")[2] for entry of an order, substantially in the form of the proposed order, attached hereto as **Exhibit A** (the "Proposed Confirmation Order") pursuant to section 1129 of the Bankruptcy Code. In support of confirmation of the Plan, the Debtor relies upon and incorporates by reference: (i) the *Declaration of Dr. Pehong Chen in Support of Chapter11 Petition and First Day Pleadings* [D.I. 2] (the "First Day Declaration"); and (ii) the *Declaration of Dr. Pehong Chen in Support of Confirmation of the Amended Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for BroadVision, Inc.* (the "Confirmation Declaration") filed contemporaneously herewith. In further support of confirmation, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

Following good faith, arm's-length negotiations with ESW Capital, LLC (the "Plan Sponsor" or "ESW"), the Debtor entered into a restructuring support agreement (the "RSA") with ESW Capital, LLC (the "Plan Sponsor" or "ESW"), and certain of the Debtor's largest shareholders, pursuant to which the Debtor would implement the transactions set forth in the Plan.

---

[2]       Capitalized terms not defined herein have the meanings ascribed to them in the Plan.

1

The agreement embodied in the RSA, which has been approved by this Court, allowed the Debtor to propose the Plan prior to the Petition Date. *See Order Authorizing the Debtor's Assumption of the Restructuring Support Agreement* [D.I. 102].

The Plan provides for the reorganization of the Debtor by retiring, cancelling, extinguishing, and/or discharging the Debtor's prepetition Interests and issuing New Equity to ESW in exchange for its existing Equity Interests.  The Consideration will allow for payment in full of all holders of Allowed Claims and a material distribution to holders of Allowed Equity Interests.

The Debtor is prepared to proceed with Confirmation of the Plan. As set forth more fully below, the Plan satisfies each applicable standard under Bankruptcy Code section 1129, all other applicable provisions of the Bankruptcy Code, and is consistent with prevailing law. Thus, the Debtor respectfully requests that the Court enter an order, substantially in the form of the Confirmation Order, confirming the Plan.

## STATEMENT OF FACTS

### A.    General Background

1.    On March 30, 2020 (the "Petition Date"), the Debtor filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee has been appointed in this Chapter 11 Case.

2.    Prior to the Petition Date, the Debtor has entered into arm's-length negotiations with key stakeholders, which negotiations resulted in the entry into the RSA among the Debtor, the Plan Sponsor, and certain of the Debtor's largest shareholders, pursuant to which the Debtor would implement the restructuring transactions (the "Restructuring") set forth in the Plan.  Because

2

all Classes of Claims and Interests under the Plan are either (i) unimpaired and deemed to accept; or (ii) impaired and deemed to reject, there were no Classes of Claims or Interests entitled to vote to accept or reject the Plan, and thus, the Debtor did not commence a solicitation process for approval of the Plan.

3.      On April 30, 2020, the Debtor filed the *Supplement to Prepackaged Chapter 11 Plan of BroadVision, Inc.* [D.I. 113] (the "Initial Plan Supplement").  The Plan Supplement included the following documents: Amended and Restated Certificate of Incorporation; Amended and Restated Bylaws; Post-Closing Resolutions of Sole Shareholder Appointing the Board of Directors; Post-Closing Board Resolutions Appointing Officers; and Distribution Trust Agreement.

4.      On May 12, 2020, the Debtor filed the *First Amended Supplement to Prepackaged Chapter 11 Plan of BroadVision, Inc.* [D.I. 127] (the "First Amended Plan Supplement" and together with the Initial Plan Supplement and any further amendments or supplements to the documents contained therein, the "Plan Supplement"), which included a revised Distribution Trust Agreement and designated David Carickhoff as the Distribution Trustee.

5.      The Debtor respectfully refers the Court to:

(a)      the Plan;

(b)      the Disclosure Statement;

(c)      the First Day Declaration;

(d)      the *Notice of (I) Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object to Thereto*, filed April 23, 2020 [D.I. 81] (the "Cure Notice"), as amended by the *Combined Notice of Amendment to (I) the Schedule of Rejected Contracts and (II) the Assumption and Cure Schedule Related to the Amended Prepackaged Chapter 11 Plan of BroadVision, Inc.*, filed May 8, 2020 [D.I. 121] (the "Notice of Amendment to Rejection Schedule and Cure Schedule") and the *Combined Notice of Second Amendment to (I) the Schedule of Rejected Contracts and (II) the Assumption and Cure Schedule Related to the Amended Prepackaged*

3

*Chapter 11 Plan of BroadVision, Inc.*, filed May 12, 2020 [D.I. 125] (the "Notice of Second Amendment to Rejection Schedule and Cure Schedule"), and collectively with respect to the assumption and cure amounts of certain Executory Contracts and Unexpired Leases, the "Cure Notices");

(e)    the Plan Supplement;

(f)    the *Affidavit of Publication of Combined Notice* [D.I. 95] (the "Combined Notice Publication Affidavits");

(g)    the *Affidavit of Publication of Bar Date Notice* of the [D.I. 96] (the "Bar Date Notice Publication Affidavit");

(h)    the *Affidavit of Service* [D.I. 72] (the "Combined Hearing Notice Affidavit"), which certifies service of the Combined Hearing Notice (as defined below);

(i)    the *Affidavit of Service Regarding the Notice of Plan Supplement to the Prepackaged Chapter 11 Plan of BroadVision, Inc.* [D.I. 124] (together, the "Plan Supplement Affidavits")[3];

(j)    the Proposed Confirmation Order; and

(k)    the record of this chapter 11 case for an overview of relevant facts that may bear on confirmation of the Plan.

6.    The Debtor further relies on the supporting declarations and any testimony and other declarations that may be submitted at or in connection with the Combined Hearing on adequacy of the Disclosure Statement and confirmation of the Plan.

**B.    Overview of the Plan[4]**

7.    The primary purpose of the Plan is to implement the Restructuring, consistent with the RSA. If confirmed, the Plan will deleverage the Debtor's capital structure and preserve the going-concern value of the Debtor's businesses, maximize recoveries available to all constituents, and provide for an equitable distribution to the Debtor's stakeholders. Generally, the Plan provides

---

[3]    The Debtor has contemporaneously filed the First Amended Plan Supplement and thus the Affidavit of Service to be filed by Epiq has not yet been submitted.  The Debtor will cause Epiq to serve the First Amended Plan Supplement upon the requisite parties and file such Affidavit of Service prior to the Combined Hearing.

[4]    This summary is qualified in its entirety by the terms of the Plan. In the event of any conflict between this summary and the terms of the Plan, the terms of the Plan shall control and govern.

4

for (1) the reorganization of the Debtor by retiring, cancelling, extinguishing and/or discharging all Interests; (2) the distribution of Available Cash to holders of Allowed Claims and Interests in accordance with the priority scheme established by the Bankruptcy Code or as otherwise agreed; and (3) the issuance of 100% of the New Equity in the Reorganized Debtor to ESW. This reorganization will enhance the Debtor's long-term growth prospects and competitive position and allow the Debtor to emerge from its Chapter 11 Case as a reorganized entity quickly and continue to provide services to its clients and partners well into the future.

8.    The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtor, and indicates the voting status of each class:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Secured Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 3 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Equity Interests | Unimpaired | No (deemed to accept) |
| Class 5 | Other Interests | Impaired | No (deemed to reject) |

9.    The Plan provides that on the Effective Date, except as otherwise provided therein, each executory contract and unexpired lease shall be deemed assumed by the Debtor unless such executory contract or unexpired lease was identified for rejection on Exhibit B to the Plan, as amended. As of the date of this Memorandum, the Debtor intends to reject the six agreements identified on the Notice of Second Amendment to Rejection Schedule and Cure Schedule.

### C.    It was Not Necessary to Solicit Votes for Acceptance of Rejection of the Plan

10.    As described above, because the holders of Claims or Interests in Classes 1–4 are deemed to accept the Plan, and therefore not entitled to vote to accept or reject the Plan, the Debtor does not believe it is necessary to solicit votes from such holders. Holders of Interests in the only other Class under the Plan, Class 5 – Other Interests, are deemed to reject the Plan and therefore

5

not entitled to vote to accept or reject the Plan (collectively, with Classes 1–4, the "Non-Voting Classes").

**D.    Setting Bar Dates and Filing Schedules to Confirm General Unsecured Claims**

11.    In order to ascertain all holders of general unsecured claims (Class 3 under the Plan, as described below), on the Petition Date the Debtor (a) requested in the Confirmation Procedures Motion (as defined below) authority to file only its Schedules D, E/F, and G ("Schedules") and (b) filed the *Motion of the Debtor for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Section 503(b)(9) Claims, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 10] (the "Bar Date Motion"), requesting that the Court (i) set the bar dates for which holders of general unsecured claims, including claims under section 503(b)(9) of the Bankruptcy Code, must file proofs of claim, (ii) approve the publication notice of the bar dates (the "Notice of Establishment of Bar Dates"), and (iii) the form of proof of claim.

12.    On March 31, 2020, the Debtor filed its Schedules [D.I. 22].

13.    On April 1, 2020, the Court entered the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Section 503(b)(9) Claims, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 46] (the "Bar Date Order"), which set May 8, 2020 at 4:00 p.m. (ET) as the "General Bar Date" for all persons and entities, including holders of 503(b)(9) claims and set September 28, 2020 at 4:00 p.m. (ET) as the "Governmental Bar Date" by which all Governmental Units must file proofs of claim. The Bar Date Order also required that on or before April 6, 2020, the Debtor must cause service of its Schedules and the Bar Date Establishment Notice to be made upon (a) all parties that requested notice in the Chapter 11 Case; (b) all persons or entities that have previously filed proofs of claim; (c) all known or suspected holders of Claims against the Debtor as of the Petition Date, including the parties listed on the

6

Debtor's Schedules; (d) all parties to Executory Contracts and Unexpired Leases; (e) all parties in litigation with the Debtor; and (f) all applicable Governmental Units.

**E.      Notice of the Commencement of the Chapter 11 Case and Combined Hearing**

14.      On the Petition Date, the Debtor filed the <u>Confirmation Procedures Motion</u>,[5] seeking, among other things, (i) approval of certain forms of notice related to the Plan and the hearing to consider approval of the Disclosure Statement and confirmation of the Plan (the "<u>Combined Hearing</u>") and (ii) authorization for the Debtor to file only its Schedules so that the Debtor may confirm its general unsecured claims (Class 3 of the Plan), so that all such general unsecured claims may be paid in full in accordance with the Plan, should the Plan be confirmed.

15.      On April 1, 2020, the Court entered an order [D.I. 51] (the "<u>Scheduling Order</u>")[6], which approved the Debtor's proposed forms of notice and set the Combined Hearing for May 14, 2020.   On April 6, 2020, the Debtor caused its claims and noticing agent, Epiq Corporate Restructuring LLC ("<u>Epiq</u>") to send copies of the notice attached as Exhibit 1 to the Scheduling Order (the "<u>Combined Hearing Notice</u>") to all known creditors and interest holders of record as of March 30, 2020 at 11:59 p.m. The Combined Hearing Notice provided notice of (i) the bankruptcy filing, (ii) the filing of the Plan and Disclosure Statement and a summary of the Restructuring

---

[5]      *See Motion of the Debtor for Entry of an Order (I) Scheduling a Combined Hearing on (A) Adequacy of Disclosure Statement, (B) Confirmation of Plan, and (C) the Assumption of Executory Contracts and Cure Amounts; (II) Approving Form and Manner of Notice of (A) Combined Hearing, (B) Commencement of Chapter 11 Case, and (C) Assumption of Executory Contracts and Cure Amounts Related Thereto, and Objection Deadlines; (III) Establishing Procedures for Objecting to (A) Disclosure Statement, (B) Plan, and (C) Proposed Assumption or Rejection Of Executory Contracts and Cure Amounts; (IV) Conditionally (A) Directing the United States Trustee Not to Convene a Section 341 Meeting of Creditors, and (B) Modifying Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (V) Granting Related Relief [D.I. 13].*

[6]      *See Order (I) Scheduling a Combined Hearing on (A) Adequacy of Disclosure Statement, (B) Confirmation of Plan, and (C) the Assumption of Executory Contracts and Cure Amounts; (II) Approving Form and Manner of Notice of (A) Combined Hearing, (B) Commencement of Chapter 11 Case, and (C) Assumption of Executory Contracts and Cure Amounts Related Thereto, and Objection Deadlines; (III) Establishing Procedures for Objecting to (A) Disclosure Statement, (B) Plan, and (C) Proposed Assumption or Rejection Of Executory Contracts and Cure Amounts; (IV) Conditionally (A) Directing the United States Trustee Not to Convene a Section 341 Meeting of Creditors, and (B) Modifying Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (V) Granting Related Relief [D.I. 51].*

7

contemplated thereby, including releases, exculpation, and injunction provisions of the Plan (including procedures to opt-out from third-party releases), (iii) the date and time of the Combined Hearing, and (vi) the deadline to object to approval of the Disclosure Statement or confirmation of the Plan. *See* Combined Hearing Notice Affidavit.  In addition, copies of the Plan and the Disclosure Statement and all other pleadings and documents that have been filed in this Chapter 11 Case have been made available free of charge at Epiq's website: https://dm.epiq11.com/case/broadvision/info (the "Case Website").

16.     Additionally, to provide constructive notice to the Debtor's potential or unknown creditors, the Debtor directed publication of the Combined Notice and the Bar Date Establishment Notice in the April 14, 2020 edition of *USA Today*. *See* Combined Notice Publication Affidavits [D.I. 95-1] and Bar Date Establishment Notice Publication Affidavit [D.I. 96-1].  To ensure all of the Debtor's shareholders received such notices, the Debtor publicly filed with the Securities Exchange Commission ("SEC") the Combined Notice and Notice of Establishment of Bar Dates in its Form 8-K, filed April 9, 2020.  *See* Ex. 10.3 and 10.4, Form 8-K of BroadVision, Inc., filed April 9, 2020.

## **MEMORANDUM OF LAW**

17.     This Memorandum has five parts: Section I addresses the requirements for confirmation pursuant to Bankruptcy Code sections 1123 and 1129; Section II addresses adequacy of the Disclosure Statement; Section III addresses the assumption or rejection of executory contracts and unexpired leases under the Plan; Section IV addresses the Releases under the Plan; and Section V addresses the Debtor's request for a waiver of Bankruptcy Rule 3020(e).

8

## I.     THE PLAN FULFILLS THE STATUTORY REQUIREMENTS FOR CONFIRMATION UNDER BANKRUPTCY CODE SECTIONS 1123 AND 1129

18.     To obtain confirmation of the Plan, the Debtor must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 119-120 (D. Del. 2006). As set forth below and based upon the record and filings in this Chapter 11 Case, the Plan satisfies all applicable subsections of sections 1123 and 1129 of the Bankruptcy Code.

### A.     The Plan Satisfies the Requirements for Confirmation under Bankruptcy Code Section 1129(a)(1)

19.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1); *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988). The legislative history of Bankruptcy Code section 1129(a)(1) informs that this provision encompasses the requirements of Bankruptcy Code sections 1122 and 1123 governing classification of claims and contents of a plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978). *See also In re Toy & Sports Warehouse, Inc*., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984); *In re Tribune Co.*, 464 B.R. 126, 183 (Bankr. D. Del. 2011); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001).  As demonstrated below, the Plan complies with the requirements of the Bankruptcy Code.

#### 1.     The Plan Complies with Section 1122(a) of the Bankruptcy Code

20.     Section 1122(a) of the Bankruptcy Code provides in pertinent part that "[e]xcept as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. §1122(a).For a classification structure to satisfy Bankruptcy Code section 1122, it is not necessary that all substantially similar claims or interests be designated to the same class, instead,

9

all claims or interests designated within a particular class must be substantially similar to each other. *In re DRW Prop. Co.*, 82, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986). Likewise, Bankruptcy Code section 1122 does not require claims be classified together simply because they may share some attributes. *See*, *e.g.*, *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060 (3d Cir. 1987) ("[t]he express language of this statute explicitly forbids a plan from placing dissimilar claims in the same class; it does not, though, address the presence of similar claims in different classes."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 348 (Bankr. D. Del. 2004) (noting that while "section 1122 . . . provides that claims that are not 'substantially similar' may not be placed in the same class; it does not expressly prohibit placing 'substantially similar' claims in separate classes").

21.     Courts grant debtors broad discretion in classifying claims and equity interests under a chapter 11 plan, subject to the requirements of section 1122(a) of the Bankruptcy Code. *See In re Nuverra Envtl. Sols, Inc.*, 590 B.R. 75, 96 (D. Del. 2018) ("there is significant flexibility in classifying claims and interests into different classes as long as a rational legal or factual basis for separate classification exists and all claims or interests within a particular class are substantially similar."). The Court "has 'broad discretion' to decide if a plan satisfies that requirement, and [a court] will uphold a plan's classification scheme so long as it is 'reasonable' and does not 'arbitrarily designate classes.'" *In re Armstrong World Indus.*, *Inc.*, 348 B.R. at 159 (*quoting In the Matter of Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987)).

22.     Here, the Plan provides for the separate classification of Claims and Interests in the Debtor based upon differences in the nature and/or priority of such Claims and Interests. In addition to the Administrative Claims and Priority Tax Claims, which need not be classified under the Bankruptcy Code, the Plan designates five (5) Classes of Claims and Interests in the Debtor:

> <u>Class 1</u>: Secured Claims
>
> <u>Class 2</u>: Other Priority Claims

10

Class 3: General Unsecured Claims

Class 4: Equity Interests

Class 5: Other Interests

23.     The Claims and Interests placed within each Class are substantially similar to other Claims and Interests in each such Class. The Debtor has a good faith, valid business, factual, and legal reasons for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan's classification of Claims and Interests does not prejudice the rights of such holders of Claims and Interests and is consistent with the requirements of the Bankruptcy Code. The Debtor submits that the standard under section 1122(a) of the Bankruptcy Code has been met, because the Plan does not reflect the grouping of dissimilar claims at all, let alone for inappropriate purposes. Because each class consists of only substantially similar Claims or Interests, the Court should approve the classification scheme as set forth in the Plan as consistent with section 1122(a) of the Bankruptcy Code.

### 2.     The Plan Complies With Bankruptcy Code Section 1123(a)[7]

24.     Bankruptcy Code section 1123(a) sets forth seven requirements which must be included in a chapter 11 plan:

(a)     classes of claims must be designated;

(b)     unimpaired classes must be specified;

(c)     impaired classes must be specified;

(d)     claims or interests within the same classes must be treated the same;

(e)     adequate means of implementation must be provided;

---

[7]     Section 1123(a)(8) of the Bankruptcy Code is not applicable because the Debtor is a corporation.

(f)   issuance of nonvoting equity must be prohibited; and

(g)   officers and directors must be selected in accordance with public policy.

The Plan fully comports with Bankruptcy Code section 1123(a).

### a.   Section 1123(a)(1): Designation of Classes of Claims and Interests

25.   Section 1123(a)(1) provides that a plan must designate, subject to section 1122 of the Bankruptcy Code, classes of claims and equity interests. As discussed above, the Plan designates five (5) different classes of Claims and Interests, consistent with the dictates of section 1122. *See* Plan, Article III. Accordingly, the Plan satisfies the requirements of section 1123(a)(1) of the Bankruptcy Code.

### b.   Section 1123(a)(2): Specification of Classes that Are Not Impaired by the Plan

26.   Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify which classes of claims or interests are unimpaired by the plan. As set forth in Article III of the Plan, Claims in Classes 1, 2, 3 and 4 are designated as unimpaired under the Plan. *See* Plan, Article III. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### c.   Section 1123(a)(3): Specification of Treatment of Classes that Are Impaired by the Plan

27.   Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify how it will treat impaired classes of claims or interests. Article III of the Plan specifies that Class 5 is impaired within the meaning of section 1124 of the Bankruptcy Code and clearly specifies the treatment of the Claims and Interests in those classes. *See* Plan, Article III. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### d.   Section 1123(a)(4): Equal Treatment Within Each Class

28.    Section 1123(a)(4) requires that a plan provide from the assets and rights of the estate the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to receive less favorable treatment than other class members. Article III of the Plan provides for identical treatment of all holders of Claims or Interests within a particular Class, unless such holder agrees to receive less favorable treatment than other Class members.  *See* Plan, Article III. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### e.    Section 1123(a)(5): Adequate Means for Implementation

29.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Among other things, Article V contains provisions related to the closing of the transaction with the Plan Sponsor; the means for reorganizing the Debtor, including cancellation of existing Interests and issuance of New Equity; the funding of the Plan Consideration; the creation of the Distribution Trust; and the transfer of the Distribution Trust Assets to the Distribution Trust. *See* Plan, Article V. Accordingly, the Plan, together with the documents and agreements contemplated therein and in the Plan Supplement, sets forth the means for the Plan's implementation as required by section 1123(a)(5) of the Bankruptcy Code.

30.    Specifically, the Plan provides that the Debtor will continue to exist and its assets will vest in the Reorganized Debtor.  Except as otherwise set forth in the Plan, the Debtor will assume all of its Executory Contracts and Unexpired Leases, except for those listed on Exhibit B to the Plan, as amended. Section 365(a) of the Bankruptcy Code provides that, subject to the court's approval, a [debtor] "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Upon finding that a [debtor] has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the

13

assumption under section 365(a) of the Bankruptcy Code. *See In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 25 (2d Cir. 1996); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993).

31.    Section 365(b)(1)(A) requires that the Debtor promptly cure existing defaults under each Executory Contract and Unexpired Lease prior to or upon assumption.  On April 23, 2020, the Debtor filed and provided requisite notice of the Cure Notice [D.I. 81], which was subsequently amended on May 8, 2020 by the Notice of Amendment to Rejection Schedule and Cure Schedule [D.I. 121], and further amended on May 12, 2020 by the Notice of Second Amendment to Rejection Schedule and Cure Schedule [D.I. 125].  The Debtor will cure all existing defaults under the Executory Contracts and Unexpired Leases as of the Effective Date of the Plan and, accordingly, the Executory Contracts and Unexpired Leases may be assumed by the Debtor.

32.    Accordingly, the Plan sets forth the means for the Plan's implementation as required by section 1123(a)(5) of the Bankruptcy Code.

### f.    Section 1123(a)(6): Prohibition on the Issuance of Non-Voting Securities

33.    Section 1123(a)(6) prohibits the issuance of nonvoting equity securities, and requires amendment of the debtor's charter to so provide. *See* 11 U.S.C. § 1123(a)(6). Bankruptcy Code section 1123(a)(6) is satisfied because the Reorganized Debtor is not issuing any nonvoting equity securities. Section 5.1 of the Plan specifically provides that "the Reorganized Debtor's Charter Documents shall be deemed amended . . . to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required by Bankruptcy Code section 1123(a)(6)." Further, the Plan Supplement filed by the Debtor contains an Amended and Restated Certificate of Incorporation which prohibits the issuance of nonvoting equity securities. *See* D.I. 113. Therefore, the Plan satisfies the requirements set forth in section 1123(a)(6) of the Bankruptcy Code.

g. **Section 1123(a)(7): Provisions Regarding Directors and Officers**

34. Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. §1123(a)(7). Section 1123(a)(7) is augmented by the restrictions set forth in section 1123(a)(6) and by section 1129(a)(5), which requires that the debtor disclose the identify and affiliation of individuals proposed to serve as directors, officers or voting trustees of the debtor following confirmation. Additionally, section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director or officer be consistent with the interests of creditors and equity securities holders and with public policy. *See* 11 U.S.C. § 1129(a)(5)(A)(ii).

35. Section 5.2 of the Plan discharges all of the Debtor's directors and officers from their duties as of the Effective Date without any further action. The Plan Sponsor is electing new members for the board of directors and officers of the Reorganized Debtor, as of the Effective Date, in accordance with the Reorganized Debtor's Charter Documents, as set forth in the Plan Supplement.  Each of the new directors and officers is well qualified and his/her service will be in the best interests of the Reorganized Debtor and consistent with the interests of the Reorganized Debtor's stakeholders and public policy, and therefore satisfies section 1123(a)(7) of the Bankruptcy Code.

36. In sum, the Plan satisfies Bankruptcy Code section 1123(a).

3. **The Plan Incorporates Certain Permissible Provisions Consistent with Bankruptcy Code Section 1123(b)**

37. Section 1123(b) of the Bankruptcy Code sets forth various permissive provisions that may be incorporated in a chapter 11 plan. Among other things, section 1123(b) provides that

WEST\290435129.6

a plan may (i) impair or leave unimpaired any class of claims or interests, (ii) provide for the assumption or rejection of executory contracts and unexpired leases, (iii) provide for the settlement or retention of claims of the debtor, and (iv) include any other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1123(b)(1)-(3), (6).  Each provision of the Plan is consistent with Bankruptcy Code section 1123(b).

38.     Bankruptcy Code section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." Article III of the Plan sets forth the treatment of the five Classes. Accordingly, the Plan is consistent with Bankruptcy Code section 1123(b)(1).

39.     Bankruptcy Code section 1123(b)(2) allows a plan to provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to Bankruptcy Code section 365. Article VII of the Plan contains provisions regarding the assumption and rejection of executory contracts and unexpired leases under the Plan. Therefore, the Plan is consistent with Bankruptcy Code section 1123(b)(2).

40.     Pursuant to and consistent with Bankruptcy Code sections 1123(b)(3) and (5): the Distribution Trustee and the Reorganized Debtor are entitled to object to Claims under Section 6.1 of the Plan; the Reorganized Debtor retains and has the exclusive right to enforce any and all of the Debtor's claims, rights and causes of action under Section 5.6 of the Plan; Article X of the Plan provides for the comprehensive settlement of claims and controversies relating to the rights that holders of Claims or Interests may have with respect to any Allowed Claims or Allowed Equity Interests or any distributions made pursuant to the Plan on account of such Allowed Claims or Allowed Equity Interests; and ESW agreed to accept the ESW Equity Interest Treatment in lieu of

16

the Cash recovery available to other holders of Allowed Equity Interests pursuant to the Equity Interest Recovery.

41.     Bankruptcy Code section 1123(b)(4) provides that a plan may "provide for the sale of all or substantially all of the property of the estate, and for the distribution of the proceeds of such sale among holders of claims or interests." This provision is not applicable to this reorganization Plan.

42.     Bankruptcy Code section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." In accordance with Bankruptcy Code section 1123(b)(6), the Plan contains releases, including third party releases, discharge, injunction, and exculpation provisions that are integral to the Plan and are consistent with applicable provisions of the Bankruptcy Code and case law in the Third Circuit. *See* Article X of the Plan.  These provisions are proper because, among other things, they are the product of good faith and arm's-length negotiations and in exchange for the good, valuable and reasonably equivalent consideration provided by the Released Parties[8] and the Exculpated Parties[9], as applicable.  In addition, the Plan includes other appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including, without limitation: (a) Article VI, establishing procedures for resolving Disputed Claims and governing distributions on account of

---

[8]      "Released Party" means each of: (a) the Debtor and the Reorganized Debtor; (b) ESW; (c) the Consenting Shareholders (being Dr. Pehong Chen and Honu Holdings, LLC), and with respect to the foregoing Entities in clauses (a) through (c), such Entities' respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (c), each solely in their capacity as such). *See* Plan, Section 1.100.

[9]      "Exculpated Party" means each of: (a) the Debtor and the Reorganized Debtor; and (b) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and advisors. *See* Plan, Section 1.64.

Allowed Claims and Allowed Equity Interests; and (c) Article XI, providing for the retention of jurisdiction by the Court over certain matters after the Effective Date.

43.     These discretionary provisions are proper because, among other things, they are the product of arm's-length negotiations and are critical provisions of the Plan. Such discretionary provisions, including the release, discharge, exculpation, and injunction provisions are fair and equitable, given for valuable consideration, and in the best interests of the Debtor and its Estate. Moreover, the Plan's third party release provisions expressly provide that the release is granted only by Creditors and Interest Holders who are unimpaired and do not indicate an election to opt out of granting such release. The Debtor believes that the discretionary provisions of the Plan are consistent with the Bankruptcy Code and, thus, the requirements of Bankruptcy Code section 1123(b) are satisfied.

### 4.     The Plan Complies with Section 1123(d) of the Bankruptcy Code

44.     Section 1123(d) of the Bankruptcy Code provides that, "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). As described above and as required by section 365(b)(1) of the Bankruptcy Code, any monetary amounts by which any Executory Contract or Unexpired Lease that may be assumed under the Plan is in default shall be satisfied by payment of the required cure amount, if any, as of the Effective Date of the Plan. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

### B.     The Plan Satisfies the Requirements for Confirmation Under Bankruptcy Code Section 1129(a)(2)

45.     Bankruptcy Code section 1129(a)(2) requires that the plan proponent "compl[y] with the allocable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history of Bankruptcy Code section 1129(a)(2) reflects that this provision is intended to encompass

the disclosure and solicitation requirements under Bankruptcy Code sections 1125 and 1126. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."). *See also In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 149; *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992). As set forth below, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including the provisions of Bankruptcy Code sections 1125 and 1126 regarding disclosure and plan solicitation and Bankruptcy Rules 3017, 3018, and 3019. *See* Combined Hearing Notice Affidavit [D.I. 72]; Cure Notices [D.I. 81, 121, 125]; Combined Notice Publication Affidavits [D.I. 95-1] and Bar Date Establishment Notice Publication Affidavit [D.I. 96-1]; the Plan Supplement Affidavits [D.I. 124].

### 1.    The Plan Complies With Bankruptcy Code Section 1125

46.    Bankruptcy Code section 1125 prohibits solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to each such holder the plan or a summary of the plan, and a written disclosure statement approved." In this case, as described below, no parties were required to be solicited, and none were solicited, to vote to accept or reject the Plan.  In light of the foregoing, the Court approved the distribution of the Confirmation Procedures Order to Creditors and Interest Holders, and scheduled the hearing for consideration of the Disclosure Statement for the same date as the Confirmation Hearing.

47.    The Debtor—through Epiq—distributed the Combined Hearing Notice to all known creditors and interest holders of record as of March 30, 2020 at 11:59 p.m., which gave each notice of (i) the bankruptcy filing, (ii) the filing of the Plan and Disclosure Statement and a summary of the Restructuring contemplated thereby, including releases, exculpation, and

injunction provisions of the Plan (including procedures to opt-out from third-party releases), (iii) the date and time of the Combined Hearing, and (vi) the deadline to object to approval of the Disclosure Statement or confirmation of the Plan. *See* Combined Hearing Notice Affidavit. In addition, copies of the Plan and the Disclosure Statement have been made available free of charge at the Case Website.  Finally, in accordance with the Confirmation Procedures Order, to provide constructive notice to the Debtor's potential or unknown creditors, the Debtor directed Epiq to publish of the Combined Notice and the Bar Date Establishment Notice in the April 14, 2020 edition of *USA Today*. *See* Combined Notice Publication Affidavits [D.I. 95-1] and Bar Date Establishment Notice Publication Affidavit [D.I. 96-1].  Also, to ensure all of the Debtor's shareholders received such notices, the Debtor publicly filed with the SEC the Combined Notice and Notice of Establishment of Bar Dates in its Form 8-K, filed April 9, 2020.  *See* Ex. 10.3 and 10.4, Form 8-K of BroadVision, Inc., filed April 9, 2020.

48.     As of the date hereof, the Debtor has received no objections to the Plan other than *Oracle's Limited Objection to and Reservation of Rights Regarding (1) Amended Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for BroadVision, Inc. and (2) Notice of (I) Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* [D.I. 119] (the "Limited Objection"), filed on May 7, 2020, submitted by Oracle America, Inc. ("Oracle").  In order to resolve the Limited Objection, the Debtor filed the Notice of Second Amendment to Rejection Schedule and Cure Schedule, pursuant to which the Debtor has rejected all Executory Contracts to which Oracle or an affiliate of Oracle is a counterparty. The Debtor believes that Oracle will withdraw its Limited Objection prior to the Combined Hearing.

### 2. The Plan Complies With Bankruptcy Code Section 1126

49. Bankruptcy Code section 1126 specifies the requirement for acceptance of a chapter 11 plan. Section 1126(f) provides that a class that is unimpaired is not required to be solicited, and section 1126(g) provides that a class that is not entitled to receive any property is deemed not to accept the plan. Therefore, in this case no parties were required to be solicited to vote to accept or reject the Plan and no parties were solicited because:

    (a) Holders of Claims and Interests in Classes 1, 2, 3 and 4 are unimpaired under the Plan, and, pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have accepted the Plan.

    (b) Holders of Interests in Class 5 will receive no distributions and have been deemed to reject the Plan, pursuant to Bankruptcy Code section 1126(g).

50. The Debtor has proceeded in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Confirmation Procedures Order, all applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations in not soliciting the acceptance of the Plan by any parties. The Debtor, therefore, has complied with the applicable provisions of the Bankruptcy Code and has satisfied the requirements of Bankruptcy Code section 1129(a)(2).

### C. The Plan Has Been Proposed in Good Faith (Bankruptcy Code Section 1129(a)(3))

51. As required by Bankruptcy Code section 1129(a)(3), the Plan has been "proposed in good faith and not by any means forbidden by law." The Third Circuit has addressed the good faith standard under Bankruptcy Code section 1129(a)(3), stating that "[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point on inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3rd Cir. 2000); *In re Lernout & Hauspie Speech Prods. N.V.*, 308 B.R. 672, 675 (D. Del. 2004) (finding that good faith requires "that (1)

the plan be consistent with the objectives of the Bankruptcy Code; (2) the plan be proposed with honesty and good intentions and with a basis for expecting that reorganization can be achieved; or (3) there was fundamental fairness in dealing with the creditors."). *See also In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999); *accord In re Century Glove, Inc*., No. 90-400-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) ("[W]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied."). The Court should also consider the totality of the circumstances surrounding a plan to determine if it has been proposed in good faith. *See In re New Valley Corp*., 168 B.R. 73, 81 (Bankr. D.N.J. 1994).

52.     The Debtor has met its good faith obligation under the Bankruptcy Code by proposing the Plan with the legitimate and honest purposes of maximizing the value of the Debtor's assets and the recovery to creditors.  Additionally, the Plan has been proposed in compliance with applicable law, rules and regulations.  The Plan is the product of arms'-length negotiations by and among the Debtor and the Plan Sponsor. Furthermore, the Debtor and its professionals have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e). The Plan has been conceived and proposed with the "honest purpose" and "reasonable hope of success" by which "good faith" under section 1129(a)(3) of the Bankruptcy Code is measured. *See In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). Accordingly, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

> **D.     The Plan Provides for Bankruptcy Court Approval of Certain Administrative Expenses (Bankruptcy Code Section 1129(a)(4))**

53.     Section 1129(a)(4) of the Bankruptcy Code requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the

plan and incident to the case," either be approved by the Court as reasonable or subject to approval of the Court as reasonable. 11 U.S.C. § 1129(a)(4). This section requires disclosure of fees and costs and court approval of such costs at confirmation or a later time.

54.    Payments made or promised by the Debtor for services or for costs and expenses in, or in connection with, this Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, have been approved by, or are subject to approval of, the Court as reasonable. Specifically, Sections 2.1 and 2.2 of the Plan sets forth procedures for Court approval of any Professional Fee Claims and Ordinary Course Liabilities through the Effective Date, and Section 5.4(h) provides for payment of all Case-Related Claims and Expenses. The procedure for the Court's review and ultimate determination of the fees, costs, and expenses to be paid by the Debtor satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code. *See Resorts Int'l*, 145 B.R. at 475-76 (stating that as long as fees, costs, and expenses are subject to final approval of the court, section 1129(a)(4) of the Bankruptcy Code is satisfied).

**E.    The Plan Provides All Necessary Information Regarding Individuals Who Will Hold Post-Confirmation Positions (Bankruptcy Code Section 1129(a)(5))**

55.    Bankruptcy Code section 1129(a)(5)(A)(i) requires the proponent of a plan to disclose the identity of certain individuals who will hold positions with the debtor or its successor after confirmation of the plan. Bankruptcy Code section 1129(a)(5)(A)(ii) requires that service of such individuals be consistent with the interests of creditors and equity security holds and with public policy. *See, e.g.*, *Toy & Sports Warehouse*, 37 B.R. at 149-50.

56.    The Plan Supplement identifies the proposed officers and directors of the Reorganized Debtor to be employed post-Effective Date in the written consents of the Sole Director attached thereto. Each identified person is well qualified and his/her service will be in the

23

best interests of the Reorganized Debtor and consistent with the interests of the Reorganized Debtor's stakeholders and public policy.

57. Further, Bankruptcy Code section 1129(a)(5)(B) requires "the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider." Except as set forth in Article VII of the Plan, all Compensation and Benefits Programs (which defined term includes employment agreements) are being assumed under the Plan. Additionally, the Plan provides that the Debtor's chief executive officer, Dr. Pehong Chen, will be employed by the Debtor on a contract basis pursuant to the Transition Services Agreement, which shall replace and supersede his current employment and benefits agreements, following the Effective Date. The terms of the Transition Services Agreement are disclosed in the Plan.

58. In addition, the identity of the Distribution Trustee has been disclosed in the First Amended Plan Supplement in satisfaction of Bankruptcy Code section 1129(a)(5)(A)(i). In accordance with Bankruptcy Code section 1129(a)(5)(A)(ii), the appointment of the Distribution Trustee will be consistent with the interests of creditors and with public policy. The Distribution Trustee was established to hold distributions until the expiration of the bar date for government entities, make any final claims objections if necessary, and issue final distributions to holders of general unsecured claims.

**F.    No Governmental Regulatory Commission Has Jurisdiction Over the Debtor (Bankruptcy Code Section 1129(a)(6))**

59. Bankruptcy Code section 1129(a)(6) permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. This provision is not applicable, as the Debtor's business did not

24

involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation.

### G.    The Plan Satisfies the Best Interests Test (Bankruptcy Code Section 1129(a)(7))

60.    Bankruptcy Code section 1129(a)(7) sets forth the so-called "best interests test." *See In re Washington Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011). This section requires that, for an impaired class of claims, each holder within that class received or retains property under the plan that is not less than they would receive in a liquidation. *See PWS Holding*, 228 F.3d at 249. The best interests test thus focuses on dissenting impaired holders of claims and interests as individuals, rather than on entire classes of claims or interests. *See Bank of Am. Nat'l Trust & Savings Assoc. v. 203 N. LaSalle St. Partnership,* 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."). *See also In re Adelphia Commc'ns, Corp.,* 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation."). The test requires that each holder of a claim or equity interest accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. *In re Larson, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003).[10]

61.    As Bankruptcy Code section 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests. If a class of claims or equity interests unanimously accepts the plan, the best interests test is deemed satisfied for all members

---

[10]    Stated another way, under the best interests test, the Court must find that each impaired creditor or equity interest holder will receive or retain value that is not less than the amount he would receive if the debtor were liquidated. *See 203 N. LaSalle,* 526 U.S. at 440.

WEST\290435129.6

of that class. Moreover, pursuant to Bankruptcy Code section 1126(f), an unimpaired class is conclusively deemed to have accepted the plan.  Here, as set forth above, only Class 5 is deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g), and all other Classes are unimpaired under the Plan.

62.     The Debtor also filed a liquidation analysis (the "Liquidation Analysis") as Exhibit B to the Disclosure Statement.  The Liquidation Analysis clearly demonstrates that a liquidation of the Debtor under chapter 7 of the Bankruptcy Code would not provide a greater recovery for any holder of a Claim or Equity Interest against the Debtor.

**H.     The Plan Has Been Accepted by Impaired Voting Classes (Bankruptcy Code Section 1129(a)(8))**

63.     Bankruptcy Code section 1129(a)(8) requires that each class of claims or interests either accept the plan or not be impaired under the plan. *See In re All Land Invs., LLC*, 468 B.R. 676, 688 (Bankr. D. Del. 2012).

64.     As set forth above, only holders of Interests in Class 5 are impaired and deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g). Notwithstanding the fact that the Plan does not satisfy Bankruptcy Code section 1129(a)(8) with respect to Class 5, the Plan may nevertheless be confirmed because it satisfies Bankruptcy Code sections 1129(a)(10) and 1129(b)(1), as described below.

**I.     The Plan Provides for the Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Bankruptcy Code Section 1129(a)(9))**

65.     Section 1129(a)(9) of the Bankruptcy Code provides that holders of certain types of priority claims must receive specific treatment dependent upon the circumstances of such claims, unless the holders of such claims have agreed to different treatment. *See* 11 U.S.C. § 1129(a)(9). Article II of the Plan provides for payment of Allowed Administrative Claims and

Allowed Priority Tax Claims in the manner required by Bankruptcy Code section 1129(a)(9). *See* Plan, Article II.

66.      The Plan also provides that the deadline for submission by Professionals for Court approval of Professional Compensation Claims for services rendered before the Effective Date shall be forty-five (45) days after the Effective Date. Therefore, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.      The Plan Has Been Accepted by at Least One Class of Impaired Claims (Bankruptcy Code Section 1129(a)(10))**

67.      Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider" if a class of claims is impaired by a plan of reorganization. 11 U.S.C. § 1129(a)(10). *See also All Land Invs.*, 468 B.R. at 69; *In re Global Ocean Carriers, Ltd.*, 251 B.R. 31, 41 (Bankr. D. Del. 2000).

68.      As discussed in the Plan, no Class of Claims is impaired under the Plan, as Class 5 only includes Interests.  As such, section 1129(a)(10) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

**K.      The Plan is Feasible (Bankruptcy Code Section 1129(a)(11))**

69.      Section 1129(a)(11)'s feasibility test mandates that confirmation of a plan will not likely be followed a liquidation or further reorganization of the debtor. 11 U.S.C. § 1129(a)(11) ("Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."). *See also In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012) ("A plan is confirmable only if it is feasible.").

70.    For a plan to be feasible it must provide "a realistic and workable framework [that is] reasonably likely to succeed on its own terms without a need for further reorganization on the debtor's part." *Id.* at 156. A debtor must demonstrate, by a preponderance of the evidence,[11] that the plan has a reasonable assurance of success. *See U.S. v. Energy Res. Co.,* 495 U.S. 545, 549 (1990); *IRS v. Kaplan (In re Kaplan),* 104 F.3d 589, 597 (3d Cir. 1997); *In re W.R. Grace & Co.,* 475 B.R. 34, 114 (D. Del. 2012), *aff'd,* 729 F.3d 332 (3d Cir. 2013) (holding that this showing requires a demonstration that the plan is not simply a "visionary scheme"). To demonstrate that a plan is feasible, however, it is not necessary that success be guaranteed. *See In re Drexel Burnham Lambert Grp., Inc.,* 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("'It is not necessary that success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success.' . . . The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required.") (quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11], at 1129–54 (15th ed. 1991)); *In re Landing Assoc., Ltd.,* 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993) (noting that no plan can offer absolute certainty and that section 1129(a)(9) requires only that the Plan offer a reasonable probability of success).

71.    The key element of feasibility is whether there exists a reasonable likelihood that the provisions of the plan can be performed and that the reorganized debtor will be commercially viable after the plan's effective date. *See In re Texaco Inc.,* 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1988) ("All that is required is that there be a reasonable assurance of commercial viability");

---

[11]    *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (rejecting "clear and convincing" as the applicable standard). The threshold of proof necessary to satisfy the requirement is relatively low. *See In re Sea Garden Motel and Apartments*, 195 B.R. 294, 304 (Bankr. D. N.J. 1996). *See also Mercury Capital Corp. v. Milford Conn. Assocs., L.P.,* 354 B.R. 1, 9 (D. Conn. 2006) ("A 'relatively low threshold of proof' will satisfy the feasibility requirement.'") (quoting *Computer Task Grp., Inc. v. Brothby (In re Brothby),* 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)).

28

*Clarkson v. Cooke Sales & Servs. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) ("[T]he feasibility test contemplates 'the probability of actual performance of the provisions of the plan ... The test is under the facts'") (citing *Chase Manhattan Mortg. Realty Trust v. Bergman (In re Bergman)*, 585 F.2d 1172, 1179 (2d Cir. 1978)); *see also The Mutual Life Ins. Co. of New York v. Patrician St. Joseph Partners (In re Patrician St. Joseph Partners)*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994) (finding that a plan meets the feasibility standard if it offers a reasonable prospect of success and is workable).

72.     Thus, the following factors have been identified by bankruptcy courts:

(a)    the prospective earnings or earning power of the debtor's business;

(b)    the soundness and adequacy of the capital structure and working capital for the debtor's post-confirmation business;

(c)    the debtor's ability to meet its capital expenditure requirements;

(d)    economic conditions;

(e)    the ability of management and the likelihood that current management will continue; and

(f)    any other material factors that would affect the successful implementation of the plan.

*In re Indianapolis Downs, LLC*, 486 B.R. 286, 298 (Bankr. D. Del. 2013).

73.     The Plan Sponsor is committed to a successful reorganization of the Debtor. The Plan Sponsor is in the business of acquiring and strengthening software companies, including companies in similar areas of business as the Debtor. The acquisition of the Reorganized Debtor fits within the Plan Sponsor's strategic plan, namely, to operate and continue the business. The Plan Sponsor also values the Debtor's IP portfolio. To that end, the Plan Sponsor has committed to providing the Consideration to acquire the Debtor and its assets, through acquisition of the New Equity. The Plan Sponsor believes that under its management, the Reorganized Debtor will enhance its relationships with its customers, while leveraging its platform to drive efficiency and

29

profitability.  The Plan Sponsor possesses sufficient liquidity to consummate the Plan and invest in the success of the Reorganized Debtor, and believes that it will be able to leverage its relationships, expertise and know-how to help the Reorganized Debtor thrive.  The Debtor filed the Chapter 11 Case in part because of its substantially declining revenue and deteriorating liquidity.  Through the Plan Sponsor's portfolio of similar technology companies, the Reorganized Debtor will be better positioned to operate successfully moving forward.  Accordingly, the Plan Sponsor is confident that the Reorganized Debtor will be feasible going forward, and will not require a further reorganization. Further, no Distributions to Creditors or Interest Holders are dependent on any metrics related to the Reorganized Debtor, such as the Reorganized Debtor's profitability.

74.    Further, no distribution to be provided to holders of Allowed Claims and Allowed Equity Interests under the Plan depends on any financial metrics of the Reorganized Debtor.  Such holders are entitled to received their Distribution from the Consideration to be paid by the Plan Sponsor, regardless of the profitability of the Reorganized Debtor.

**L.    The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Bankruptcy Code Section 1129(a)(12))**

75.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2).

76.    In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, Section 2.3 of the Plan provides that statutory fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 (if any) shall be paid in the ordinary course until the Court enters

a final decree closing this chapter 11 case. Thus, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**M.    Inapplicable Provisions (Bankruptcy Code Sections 1129(a)(13) through (a)(16))**

77.    Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of all retiree benefits, as defined in, and at the levels established pursuant to, section 1114 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(13); *see also See* 11 U.S.C. § 1114(a).  The Debtor has no pension or retiree benefits, thus, section 1129(a)(13) of the Bankruptcy Code does not apply to the Plan. Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.

78.    Bankruptcy Code section 1129(a)(14)  relates to the payment of domestic support obligations. The Debtor is not subject to any domestic support obligations, and, as such, this section of the Bankruptcy Code does not apply.

79.    Bankruptcy Code section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that terms is defined in the Bankruptcy Code). The Debtor is not an "individual," and, accordingly, section 1129(a)(15) is inapplicable.

80.    Finally, the Debtor is a moneyed, business, or commercial corporation, and accordingly, Bankruptcy Code section 1129(a)(16) is inapplicable in this Chapter 11 Case.

**N.    Confirmation of the Plan Over Non-Acceptance of Impaired Classes (Bankruptcy Code Section 1129(b))**

81.    Bankruptcy Code section 1129(b)  provides that if all applicable requirements of section 1129(a) are met, notwithstanding a failure to comply with Bankruptcy Code section 1129(a)(8), a plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted

the plan. This mechanism is known colloquially as a "cram down." Bankruptcy Code section

1129(b)(1) provides in pertinent part:

> [I]f all of the applicable requirements of [Bankruptcy Code section 1129(a)] other than [the requirements contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

82.     Accordingly, under Bankruptcy Code section 1129(b), the Bankruptcy Court may

"cram down" a plan over rejection by impaired classes of claims or equity interest as long as the

plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes. *See*

*John Hancock Mut. Life Ins. Co.*, 987 F.2d at 157 n.5. *See also Liberty Nat'l Enters. v. Ambanc*

*La Mesa Ltd. P'ship* (*In re Ambanc La Mesa Ltd. P'ship*), 115 F.3d 650, 653 (9th Cir. 1997) ("the

[p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that

the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired

class that has not accepted the [p]lan.").

83.     To determine whether "unfair determination exists," courts look to the facts and

circumstances of the particular case. *In re 203 N. LaSalle St. Ltd. P'ship.,* 190 B.R. 567, 585

(Bankr. N.D. Ill. 1995), *rev'd on other grounds,* 526 U.S. 434 (1999) (noting "the lack of any clear

standard for determining the fairness of a discrimination in the treatment of classes under a Chapter

11 plan" and that "the limits of fairness in this context have not been established."); *In re Bowles,*

48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly]

discriminate is to be determined on a case-by-case basis."). *See also In re Freymiller Trucking,*

*Inc.,* 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair

discrimination requires a court to "consider all aspects of the case and the totality of all the

circumstances"). A plan unfairly discriminates when it treats similarly-situated classes materially

different without a compelling justification. *Coram*, 315 B.R. at 349 (collecting cases); *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003). *See In re Ambanc,* 115 F.3d at 655; *In re Aztec Co.,* 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989).

84.     The Court of Appeals for the Third Circuit has not yet discussed what standard should apply when assessing unfair discrimination. *Armstrong*, 348 B.R. at 122. However, courts in this District appear to adopt a rebuttable presumption test. *Id.* Pursuant to this test, a rebuttable presumption of unfair discrimination exists when there is:

> (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

*Id.* at 121 (quoting Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11,* 72 AM. BANKR. L.J. 227 (1998)); *In re Tribune Co*, 472 B.R. 223, 242 (Bankr. D. Del. 2012).

85.     Notably, the presumption of unfair discrimination arises only if the plan's treatment of two classes results in "a materially lower percentage recovery for the dissenting class" or an allocation of "materially greater risk to the dissenting class." *Tribune Co.*, 472 B.R. at 242 (quoting *Armstrong*, 348 B.R. at 121). Thus, materiality matters because "[t]he pertinent inquiry is not whether the plan discriminates, but whether the proposed discrimination is 'unfair.'" *Id.* "Minor or immaterial differences in plan treatment do not rise to the level of unfair discrimination." *Tribune*, 472 B.R. at 242 (citing *In re Unbreakable Nation Co.*, 437 B.R. 189, 203 (Bankr. E.D. Pa. 2010)).

86.     Bankruptcy Code section 1129(b)(2) defines the phrase "fair and equitable" as follows:

33

(C) With respect to class of interests -

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property

87.     Article III designates Class 5 (Other Interests) as an impaired Class. Pursuant to the Plan, Class 5 is deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).

88.     The Plan may nonetheless be confirmed over the rejection of Class 5 pursuant to Bankruptcy Code section 1129(b) because the Plan does not discriminate unfairly and is fair and equitable with respect to all Classes. *See, e.g.*, *In re Rubicon U.S. REIT, Inc.*, 434 B.R. 168, 179 (Bankr. D. Del. 2010). The Plan is the result of a vigorous negotiation which was calculated by the Debtor to maximize value to the Debtor's estate, and which resulted in the RSA and the substantial Consideration offered by the Plan Sponsor. As set forth in the Disclosure Statement, when the final ESW proposal was delivered to the special committee on February 4, 2020, the proposed $4.375/share represented an approximate 73% premium to the 30-day trailing volume average weighted price ("VWAP") and an approximate 158% premium to the 180-day trailing VWAP.

89.     Further, no holder of any Claim or Interest junior to the Other Interests of Class 5 will receive or retain any property under the Plan on account of such junior Claim or Interest. Therefore, the Plan is fair and equitable. Moreover, the Plan does not discriminate unfairly with respect to Class 5.  Accordingly, the treatment of Class 5 satisfies the requirements of Bankruptcy Code section 1129(b).

WEST\290435129.6

**O.**     **The Plan is the Only Plan Currently on File (Bankruptcy Code Section 1129(c))**

90.     Bankruptcy Code section 1129(c) provides that, with a limited exception, a bankruptcy court may only confirm one plan. The Plan (including previous versions thereof) is the only plan that has been filed in the Chapter 11 Case and is the only plan that satisfies the requirements of subsections (a) and (b) of Bankruptcy Code section 1129. Accordingly, the requirements of Bankruptcy Code section 1129(c) are satisfied.

**P.**     **The Principal Purpose of the Plan is Not the Avoidance of Taxes (Bankruptcy Code Section 1129(d))**

91.     Bankruptcy Code section 1129(d) provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933. The Plan meets these requirements because the principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting the contrary.

## II.     THE DISCLOSURE STATEMENT PROVIDES ADEQUATE INFORMATION

92.     Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding the proposed chapter 11 plan. *See* 11 U.S.C. § 1125(b). The Debtor respectfully submits that the Disclosure Statement contains "adequate information" within the meaning of section 1125(a)(1) of the Bankruptcy Code and, thus, should be approved by the Bankruptcy Court.

93.     Section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment

35

> about the plan . . . and in determining whether a disclosure statement
> provides adequate information, the court shall consider the complexity of
> the case, the benefit of additional information to creditors and other parties
> in interest, and the cost of providing additional information . . . .

11 U.S.C. § 1125(a)(1).

94.    Thus, a debtor's disclosure statement must, as a whole, provide information that is sufficiently detailed, so far as "reasonably practicable," to permit an "informed judgment" by impaired creditors. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 584 (Bankr. D. Del. 2012); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989).  At a minimum, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

95.    The Disclosure Statement is extensive and comprehensive and contains descriptions and summaries of, among other things the history of the Debtor, the restructuring process that led to the RSA and the Plan, certain events preceding the commencement of the Debtor's Chapter 11 Case, treatment of the Claims and Interests under the Plan, material terms of the Plan, including the releases, injunction and exculpation provisions, risk factors affecting the Plan, and federal tax law consequences of the Plan.  In addition, the Disclosure Statement is the product of a collaborative effort among the Debtor and ESW.

96.    Accordingly, based on the foregoing and the lack of any objection to the Disclosure Statement, the Debtor respectfully submits that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code. Thus, the Debtor respectfully requests that the Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

36

### III.    THE ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN SHOULD BE APPROVED

97.    Article VII of the Plan provides for the assumption or rejection of all remaining Executory Contracts and Unexpired Leases pursuant to Bankruptcy Code sections 365 and 1123(b).

98.    Bankruptcy Code section 365(a) provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." Courts routinely approve motions to assume or reject executory contracts or unexpired leases upon a showing that the trustee decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *see also In re Taylor*, 913 F.2d 102, 107 (3d. Cir. 1990) (acknowledging "the traditional 'business judgment' test" for determining whether to reject an executory contract); *In re Buckhead America Corp.*, 180 B.R. 83, 88 (Bankr. D. Del. 1995) ("[T]he bankruptcy court was able to meet its requirement to find . . . that assumption of each franchise agreement was a reasonable exercise of the debtor's business judgment.").

99.    Courts generally will not second-guess a trustee's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A [trustee's] decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" (internal quotations omitted)). The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *N.L.R.B. v. Bildisco & Bildisco*, 682 F.2d at 79 (noting that the "usual test for rejection of an executory contract is simply whether rejection would

benefit the estate"). Further, "[s]ection 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *L.R.S.C. Co. v. Rickel Home Ctrs. Inc. (In re Rickel Home Ctrs. Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000). *See also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (Bankruptcy Code section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").

100.    In the sound exercise of its business judgment, the Debtor has identified the Executory Contracts and Unexpired Leases it wants to assume and reject and filed the Cure Notice and Notice of Second Amendment to Rejection Schedule and Cure Schedule [D.I. 81, 121].  All other outstanding Executory Contracts and Unexpired Leases not otherwise identified shall be deemed assumed as of the Effective Date.  All parties reserve their rights with respect to any dispute related to the assumption of an Executory Contracts and Unexpired Leases under Article VII of the Plan.

101.    The designated assumption or rejection of executory contracts and unexpired leases under the Plan is essential to the consummation of the RSA approved by the Court and will aid in implementation of the Plan. Therefore, such assumptions and rejections are in the best interests of the Debtor, its estate, and holders of claims and other parties in interest in the Chapter 11 Case. Accordingly, the proposed assumptions and rejections should be approved in connection with confirmation of the Plan.

## IV.    THE RELEASES CONTEMPLATED BY THE PLAN SHOULD BE APPROVED

102.    Article X of the Plan provides for releases by the Debtor in favor of certain third parties (the "Debtor Releases") and certain releases by third parties (the "Third Party Releases" and together with the Debtor Releases, the "Releases").  Each holder of unimpaired Creditors and Interest Holders had the opportunity to opt-out of the Third Party Release, thereby making that

release fully consensual by its terms. *Indianapolis Downs,* 486 B.R. at 303; *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012) *aff'd sub nom.*, 729 F.3d 332 (3d Cir. 2013). Further, the Releases contemplated by the Plan indicate a fundamental arm's-length agreement among the Debtor and the Plan Sponsor and are crucial to the Confirmation of the Plan. Specifically, the Third Party Releases form an essential part of the overall Plan consideration by which all parties collectively agreed to move forward with and support the Plan.

### A.    The Debtor Releases Should be Approved

103.    Claims held by the debtor against third parties are considered property of the estate and therefore may be released in exchange for settlement. *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville)*, 837 F.2d 89, 91-92 (2d Cir. 1988); *Coram*, 315 B.R. at 334-35. In making the determination of whether a release by the debtor is proper, bankruptcy courts employ the "*Master Mortgage*" factors, which looks to whether:

> (1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.
>
> (2) The non-debtor has contributed substantial assets to the reorganization.
>
> (3) The injunction is essential to reorganization. Without the it, there is little likelihood of success.
>
> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
>
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999). *See also Wash. Mut.*, 442 B.R. at 346; *U.S. Nat'l Bank Assoc. v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114 (Bankr. D. Del. 2010). "These factors are neither exclusive nor conjunctive requirements, but simply

WEST\290435129.6

provide guidance in the [c]ourt's determination of fairness."). *Wash. Mut.*, 442 B.R. at 346; *Indianapolis Downs*, 486 B.R. at 305 (approving debtor's releases though not all factors were met). *See also In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003).  When evaluating a release of a claim of the estate, the release should be approved if it "is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *Spansion*, 426 B.R. at 143.

104.    The proposed release by the Debtor of third parties is fully consistent with the *Master Mortgage* factors.

105.    <u>First</u>, an identity of interest exists among all released parties. This factor is satisfied when the debtor and released party share a common goal of achieving the successful reorganization of the debtor. *See, e.g.*, *Zenith*, 241 B.R. at 110. The Plan Sponsor and the Debtor each share an interest in the successful confirmation of the Plan and reorganization of the Debtor. Without the release of the Plan Sponsor by the Debtor, the Plan Sponsor could be mired in uncertain litigation. As a result, without such releases the Plan Sponsor would not have been willing to provide the consideration in the amount under the Plan. Thus, without the Debtor Releases, the consideration for the Debtor's assets would have been lower, resulting in a reduced recovery for the Debtor's creditors and equity holders.

106.    All other parties listed within the definition of "Released Parties" share the interest of the Debtor as they will directly or indirectly benefit from the confirmation of the Plan. Further, many of these individuals would be entitled to indemnification by the Debtor. *See, e.g.*, *Indianapolis Downs*, 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release."). Thus, if the Debtor Releases were not granted, any claims against them would, in essence, be a claim against the Reorganized Debtor, thus imposing additional costs upon the estate and the Reorganized Debtor.

40

107.    <u>Second</u>, the Debtor Releases are predicated upon substantial contributions made by the Released Parties. The Released Parties played an invaluable role in negotiation of the RSA and formation of the Plan. The Plan Sponsor will provide the Consideration.  The Released Parties have provided direct benefits to the Debtor's estate through diligently discharging their duties and contributing to the overall success of the Chapter 11 Case. The Released Parties have also made various other contributions which led directly to the formulation of this Plan, the best possible outcome for the Chapter 11 Case and maximum recovery for creditors.

108.    <u>Third</u>, the Debtor Releases are essential the Plan itself. Without the Debtor's release of the third parties, the Debtor does not believe that the manifest benefits arising under the Plan would be possible. The Debtor Releases are an essential part of the Consideration provided by the Released Parties.

109.    <u>Fourth</u>, No objections, either formal or informal, have been raised to the Releases. This demonstrates further support for the Debtor Release.

110.    <u>Fifth</u>, the Plan provides for a full recovery to all holders of Allowed Claims and a material cash distribution to holders of Allowed Equity Interests.  The alternative to the Plan, a chapter 7 liquidation, would lead to less favorable recoveries for all parties.

111.    For the foregoing reasons, the Debtor submits that *Master Mortgage* factors have been satisfied under the Plan. The Debtor Releases are the result of the exercise of the Debtor's sound business judgment, are fair and reasonable, and are in the best interests of all parties.

**B.    The Third Party Releases Should be Approved**

112.    The Third Party Releases contemplated by the Plan are narrowly and appropriately tailored. The Third Party Releases apply only to: unimpaired parties who did not opt-out by following the procedure previously approved by the Court (i.e., registering their opt-out through the portal contained on the website maintained by Epiq).

41

113.    A plan may provide for consensual third-party releases. *Coram*, 315 B.R. at 336. *See also In re Specialty Equip. Cos., Inc.*, 3 F.3d 1043, 1047 (7th Cir. 1993). Consensual third party releases are treated no different from other settlements and Bankruptcy Code section 524(e) is not implicated. *See, First Fid. Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993). "Courts in this jurisdiction have consistently held that a plan may provide for a release of third party claims against a non-debtor upon consent of the party affected." *Indianapolis Downs*, 486 B.R. at 305 (citing *Zenith*, 241 B.R. at 111).

114.    Affirmative consent to third party releases (as opposed to opting out) is <u>not</u> required. *See, e.g., Indianapolis Downs*, 486 B.R. at 306 ("As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots."); *see also In re In re Joerns Woundco Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019) (confirming plan and approving third-party releases by creditors who had consented by not opting out of the release, either by abstaining from voting or by voting against the plan without affirmatively electing to opt out); *In re Gibson Brands, Inc., et al.*, Case No. 18-11025 (CSS) (Bankr. D. Del. Oct. 4, 2018) [D.I. 872]; *In re True Religion Apparel, Inc., et al.*, Case No. 17-11460 (CSS) (Bankr. D. Del. Oct. 5, 2017) [D.I. 522]; *In re Molycorp, Inc., et al.*, Case No. 15-11357 (CSS) (Bankr. D. Del. Apr. 8, 2016) [D.I. 1580].

115.    Additionally, third party releases are considered consensual with regard to unimpaired parties. Courts in this District have also found releases to be consensual where creditors are unimpaired and deemed to accept a plan without their affirmative consent where, as is the case here, such deemed accepting creditors are receiving adequate consideration for their

42

release by being paid in full pursuant to the plan. *See Spansion, Inc.*, 426 B.R. at 144 (finding that a release was not overreaching to the extent it bound unimpaired classes deemed to have accepted the plan as those creditors had not objected to the release, were being paid in full, and had received adequate consideration for the release); *see also In re Indianapolis Downs, LLC*, 486 B.R. at 306 ("In this case, the third-party releases in question bind certain unimpaired creditors who are deemed to accept the [Prepackaged] Plan: these creditors are being paid in full and have therefore received consideration for the releases."); *see also In re Joerns Woundco Holdings, Inc.* No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019) (confirming plan and approving third-party releases where releasing creditor was unimpaired); *In re Offshore Grp. Inv. Ltd*, No. 15-12422 (BLS) (Bankr. D. Del. Jan. 15, 2016) (same); *In re Optim Energy, LLC*, No. 14-10262 (BLS) (Bankr. D. Del. Oct. 14, 2015) (same). Thus, third party releases are consensual where an unimpaired party does not opt-out.

116.    Here, the Third Party Releases were conspicuously included in the Plan and the Combined Notice. Also, the Third Party Releases are fully consensual. Only parties which are unimpaired under the Plan and did not opt-out are bound by them.[12]  Accordingly, the scope of who will be bound by the Third Party Releases is fully consistent with precedent of this Court.[13] Therefore, the Third Party Releases should be approved.

## V.    WAIVER OF ANY STAY OF THE CONFIRMATION IS APPROPRIATE

117.    The Debtor respectfully requests that, pursuant to Bankruptcy Rule 3020(e), the Court waive the 14-day stay of the Confirmation Order. Such a waiver is appropriate in these

---

[12]     The Confirmation Procedures Order and the Combined Notice, which each detailed the Third Party Releases, contained instructions for opting-out, and the consequences of not doing so. Classes 1, 2, 3 and 4 are unimpaired under the Plan.  One opt-out was received from Oracle.

[13]     For the avoidance of doubt, consistent with *Indianapolis Downs*, the Third Party Releases will be binding on all holders of Claims in Class 1, Class 2, Class 3, and Class 4 that do not opt-out. The Third Party Releases are not binding on holders of Other Interests (Class 5).

circumstances to permit the Distribution Trustee to commence his duties as quickly as practicable, to promote a prompt distribution under the Plan and the Distribution Trust Agreement for the benefit of creditors, and because a significant number of implementation activities are capable of being undertaken in short order. Therefore, the Debtor respectfully submits that good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the reasons set forth in this Memorandum, the Debtor respectfully requests that the Court (i) enter an order confirming the Plan, substantially in the form attached hereto as **Exhibit A**; and (ii) grant such other relief as is just and proper.

Dated:   May 12, 2020
        Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 */s/  R. Craig Martin*
R. Craig Martin (DE 5032)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com

– and –

Katie Allison (*pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 251-2171
Email: katie.allison@us.dlapiper.com

*Counsel to the Debtor and Debtor in Possession*